## Aberfoyle Manufacturing Co. *v.* Glen Knitting Co.

Argued February 1, 1933. Before FRAZER, C. J., KEPHART, SCHAFFER, MAXEY, DREW and LINN, JJ.

*Eli Louis Cooper,* for appellant.

*J. Wesley McWilliams,* with him *Frank A. Chalmers* and *Charles S. Wesley,* for appellee, were not heard.

PER CURIAM, March 20, 1933:

This appeal comes before us from a decree in equity dismissing exceptions of Alton Jones, a stockholder in the Glen Knitting Company, to the final account of receivers for the company, asking that the receivers be surcharged in the amounts indicated below.

The Glen Knitting Co. was placed in the hands of a receiver at the instance of plaintiff, a creditor, on February 10, 1928, and E. Boyd Weitzel named as such officer, "to conduct, manage and carry on at his discretion the business of the said company with the same power and authority in the conduct thereof as a going concern as the defendant company now possesses." Receiver Weitzel died December 27, 1928, and J. T. Feigus and William A. Forsythe were, on December 29, 1928, appointed substitute receivers with the same powers as were given the original receiver.

The receivers carried on the business of the corporation until February 18, 1929, when, with the approval of the court, they sold the company's real estate and plant to one Harry West, representing the United States Silk Knitting Company and the United States Silk Hosiery Company. West had been a valuable customer of the Glen Knitting Company during the receivership, purchasing during that time practically its entire output of hosiery, amounting to approximately $300,000. The account in question forms the basis of the first of appellant's objections. It shows hosiery billed at $8 per dozen and so charged on the Glen Company's books, the buyer, however, contending his agreement was to pay $7.75 per dozen and not $8 as charged and that payments were made and accepted by the receivers at the former price as goods were received. Upon settlement for the property and plant purchased by West, the receivers demanded payment of the contested sum of 25 cents on

each dozen of hosiery purchased by West, amounting to $8,811.09, and further an item of $11,583.75 for electric current claimed to have been furnished him by the receivers. West objected to paying these items, and finally, following considerable discussion of the various items in the disputed book account, an agreement was reached whereby his account was credited with $8,811.09, which covered not only the item of hosiery purchases in controversy, but also other items of debit and credit asserted by each party against the other. This adjustment the chancellor found was fair and reasonable and within the authority given the receivers, and upon our examination of the conflicting testimony seems to be fully warranted.

As to the claim the receivers furnished steam and electric power to outside concerns, particularly to the West Mills, worth $11,583.75, for which it is alleged they collected an inadequate amount, the chancellor properly states, there is no evidence affording a substantial basis on which the court might have fixed the amount of such service sufficient to sustain a surcharge, even if such a course appeared justified by the facts generally, which is not the case.

An examination of the record discloses no evidence that the hosiery was worth and could have been sold for more than the price finally accepted by the receivers, neither do any definite figures appear of quantities of steam and electric power generated and furnished to users outside the Glen plant on which a market value could be put. Under the circumstances, the settlement agreed upon between the receivers and the purchaser of the Glen plant was within the business discretion of the former, and no sufficient evidence being adduced to sustain the claim for electric current, and no evidence appearing of neglect or fraud, the court below properly refused to surcharge in both cases.

The decree of the court below is affirmed at cost of appellant.